**FILED**

November 08, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
            Tyler Martin
                                    DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BENJAMIN ESCOBEDO,** | § | |
| **TDCJ No. 02194525,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-21-CA-0006-OLG** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Benjamin Escobedo's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 21), wherein he challenges the constitutionality of his 2018 state court conviction for continuous sexual abuse of a child. Also before the Court are Petitioner's memorandum in support (ECF No. 21), Respondent Bobby Lumpkin's Answer (ECF No. 24), and Petitioner's Reply (ECF No. 30) thereto.

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. Background

In May 2016, a Bexar County grand jury indicted Petitioner on one count of continuous sexual abuse of a child, two counts of sexual assault of a child, and two counts of indecency with a child by contact. (ECF No. 27-15 at 6-7). A jury acquitted Petitioner of one count of sexual assault (count III) but found him guilty of the remaining charges. *State v. Escobedo,*

No. 2016CR4634 (227th Dist. Ct., Bexar Cnty., Tex. Feb. 6, 2018); (ECF No. 27-15 at 126, 169-76).   After a separate punishment hearing, the trial court sentenced Petitioner to fifty years of imprisonment on each count, with the sentences to run concurrently.  *Id.*

On direct appeal, the Texas Fourth Court of Appeals affirmed his conviction for continuous sexual abuse of a child (count I), but reversed his convictions for sexual assault of a child (count II) and indecency with a child by contact (counts IV and V).  *Escobedo v. State*, No. 04-18-00252-CR, 2018 WL 6793353 (Tex. App.—San Antonio, Dec. 27, 2018, pet. ref'd); (ECF No. 27-5).  The Texas Court of Criminal Appeals then refused his petition for discretionary review and the United States Supreme Court denied his petition for writ of certiorari.  *Escobedo v. State*, No. PD-0056-19 (Tex. Crim. App. May 8, 2019); *Escobedo v. Texas*, 140 S. Ct. 414 (Oct. 15, 2019).

Following his direct appeal proceedings, Petitioner challenged the constitutionality of his remaining conviction (count I) by filing an application for state habeas corpus relief on March 15, 2020.  *Ex parte Escobedo*, No. 90,678-02 (Tex. Crim. App.); (ECF No. 28-9 at 4-21).  The Texas Court of Criminal Appeals eventually denied the application without written order on September 2, 2020.  (ECF No. 28-3).

Petitioner then initiated the instant proceedings by filing a petition for federal habeas corpus relief, along with a memorandum in support, on December 17, 2020.  (ECF No. 3 at 14). Shortly thereafter, Petitioner requested a stay of these proceedings so that he may return to state court to raise additional claims that were not presented in his first habeas corpus application. (ECF No. 14).  This Court granted Petitioner's request and held these federal proceedings in abeyance until the state court had an opportunity to rule on Petitioner's recently-filed subsequent state habeas corpus application.  (ECF No. 15).  On April 14, 2021, the Texas Court of Criminal

Appeals dismissed the subsequent application as a successive petition pursuant to Tex. Code Crim. Proc. Art. 11.07, Sec. 4. *Ex parte Escobedo*, No. 90,678-03 (Tex. Crim. App.); (ECF No. 28-10). A few weeks later, these proceedings were reopened, and Petitioner filed an amended federal petition along with a lengthy memorandum in support. (ECF Nos. 18, 21). Respondent's answer (ECF No. 24) and Petitioner's reply (ECF No. 30) followed.

## II. Petitioner's Allegations

In his amended federal petition and supplemental memorandum in support (ECF No. 21), Petitioner set forth the following claims for relief:

(1)   His due process rights were violated when the State constructively amended the indictment;

(2)   The trial court erred by denying his motion to quash the indictment;

(3)   He was denied a fair and impartial jury due to the bias of three jurors;

(4)   His trial counsel rendered ineffective assistance due to physical and mental infirmities;

(5)   Trial counsel rendered ineffective assistance by failing to file a motion to quash the indictment;

(6)   Trial counsel rendered ineffective assistance by failing to remove biased jurors;

(7)   Trial counsel rendered ineffective assistance by failing to conduct an independent pretrial investigation;

(8)   Trial counsel rendered ineffective assistance by failing to object to improper jury instructions or the improperly-amended indictment;

(9)   Trial counsel rendered ineffective assistance by inadequately cross-examining certain key witnesses;

(10)  He is actually innocent of the offense for which he was convicted;

(11)  His appellate counsel rendered ineffective assistance on direct appeal by failing to raise a claim concerning trial counsel's failure to object to the amended indictment;

3

(12)     His appellate counsel rendered ineffective assistance on direct appeal by failing to raise a claim concerning biased jurors; and

(13)     His appellate counsel rendered ineffective assistance on direct appeal by failing to raise a claim concerning trial counsel's inadequate cross-examination.

### III.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was

objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## IV. Analysis

### A.    The Indictment (Claims 1, 2)

Petitioner first alleges that his due process rights were violated when the State constructively amended the indictment.   According to Petitioner, the amended indictment impermissibly broadened the charges against him without being submitted to a grand jury.   In his second allegation, Petitioner also contends that the trial court erred in denying his motion to quash the amended indictment.

Petitioner raised both of these allegations in his application for state habeas corpus relief. (ECF No. 28-9 at 9-11).   Citing *Ex parte Townsend*, 137 S.W.3d 79, 81-82 (Tex. Crim. App. 2004), the state habeas trial court rejected these allegations because they could have been raised on direct appeal.   *Id.* at 99-100.   The Texas Court of Criminal Appeals later adopted the state habeas court's findings and denied Petitioner's state habeas application. (ECF No. 28-3).   Based on this procedural history, both of Petitioner's claims are now procedurally barred from federal habeas review.

Under the doctrine of procedural default, this Court is precluded from reviewing "claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. 521, 527 (2017). The state habeas court's finding in this case constitutes such a denial. The state court determined Petitioner's allegations to be procedurally defaulted under *Townsend*, 137 S.W.3d at 81-82, a case which in turn relies on *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1998). This rule from *Gardner*—which bars consideration of claims that could have been but were not raised on direct appeal—is "an adequate state ground capable of barring federal habeas review." *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (citing *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004)).

This procedural bar to federal review may be overcome by demonstrating "(1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000) (internal quotation marks and citation omitted). Petitioner does not make this showing. Because Petitioner fails to demonstrate cause to excuse the procedural default or that a miscarriage of justice will result if the Court does not consider the claims on the merits, the claims are procedurally barred from the Court's review.

In any event, the sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. *Evans v. Cain,* 577 F.3d 620, 624 (5th Cir. 2009). State law dictates whether a state indictment is sufficient to confer a court with jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994). As such, this Court is "required to accord due deference to the state's interpretation of its own law that a defect of substance in an indictment does not deprive a state trial court of jurisdiction." *Id.* at 69 (citations omitted). The issue is foreclosed from consideration on federal

habeas review if "the sufficiency of the [indictment] was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citation omitted).

Here, Petitioner's claims concerning the sufficiency of the indictment were presented to the Texas Court of Criminal Appeals during his state habeas proceedings. In addition to finding the claims procedurally defaulted, the state habeas trial court found "no evidence . . . that the amendments [to the indictment] were improper." (ECF No. 28-9 at 99). The Texas Court of Criminal Appeals subsequently adopted these findings and denied the state habeas application without written order. Because the sufficiency of the indictment was squarely presented to the highest state court and that court held that the trial court had jurisdiction over this case, these claims are foreclosed to federal habeas review. *Wood*, 503 F.3d at 412.

## B.    Juror Bias (Claim 3)

Petitioner next argues he was denied a fair and impartial jury due to the bias of three seated jurors. Specifically, Petitioner contends: (1) juror Laura Menchaca was biased because she had developed PTSD from serving as a juror in a previous child sexual abuse case, (2) juror Kelley Monroe was biased because she is a sexual abuse survivor, and (3) juror Michelle Chang was biased because she also is a survivor of sexual abuse and had been convicted of a felony DWI and felony drug offense. These allegations were raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals without written order. As discussed below, Petitioner fails to demonstrate the state court's rejection was either contrary to, or an unreasonable application of, Supreme Court precedent.

"The Sixth Amendment guarantees an impartial jury, and the presence of a biased juror may require a new trial as a remedy." *Buckner v. Davis*, 945 F.3d 906, 910 (5th Cir. 2019)

(citing *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009)).   There are two ways a party may establish that a juror is biased and thus incompetent to serve: implied bias and actual bias. *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003).   Implied bias occurs only in a "narrow range of cases" where a juror's relationship to a party or the case raises such doubts about his ability to uphold his oath that he will be presumed biased as a matter of law.   *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring); *Brooks v. Dretke*, 444 F.3d 328, 330 (5th Cir. 2006). Such rare occurrences are when a juror is "employed by the prosecuting agency, [is] a close relative of a participant in the trial, [or is] somehow involved in the transaction that is the subject of the trial." *Smith*, 455 U.S. at 222; *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001).

None of these limited situations are present in the instant case.   None of the three jurors mentioned by Petitioner indicated that they were employed by the prosecution, were related to a trial participant, or were somehow involved in the sexual abuse that was the subject of the trial. While two of the jurors—Monroe and Chang—indicated that they had been sexually abused themselves, these facts fall well "outside the extreme genre of cases Justice O'Connor pointed to in her concurring opinion in *Smith v. Phillips*." *Uranga v. Davis*, 893 F.3d 282, 288 (5th Cir. 2018).   Indeed, jurors cannot be expected to set aside their life experiences, and a defendant is not entitled to "blank slate" jurors without any preconceived notions or opinions. *Virgil v. Dretke*, 446 F.3d 598, 609 (5th Cir. 2006).   For this reason, the Fifth Circuit has found that "[m]erely expressing that a life experience shades one's view does *not* equate to bias." *White v. Quarterman*, 275 F. App'x 380, 383 (5th Cir. 2008) (unpublished).   Because the juror's life experiences cannot be described as the functional equivalent of one of the "extreme situations" mentioned in *Smith*, there has been no showing of implied bias in this case.

8

Similarly, Petitioner fails to demonstrate an actual bias on the part of the three jurors. Where, as here, bias is not presumed as a matter of law, the question of "actual" juror bias becomes one of historical fact. *Wainwright v. Witt*, 469 U.S. 412, 428 (1985). A juror harbors an actual bias, such that he may be excluded for cause, if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (*quoting Witt*, 469 U.S. at 424). On federal habeas corpus review, proof of actual bias requires a showing that the juror in a given case had "such fixed opinions that they could not judge impartially the guilt of the defendant." *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002). A juror is disqualified, for example, if he *unequivocally* states during voir dire that he cannot be fair and impartial. *Virgil*, 446 F.3d at 613. However, jurors satisfy the constitutional mandate of impartiality if they can "lay aside [their] impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

Petitioner contends that each of the juror's life experiences mentioned previously equate to a bias that ultimately deprived him of his right to a fair and impartial jury. But as the record demonstrates, each of the jurors unequivocally stated that they could fairly and impartially serve as jurors in Petitioner's trial. *See* ECF No. 27-18 at 84-86 (Juror Chang stating that she could be fair and could separate the facts of this case from her own experience), 92-93 (Juror Menchaca stating that "being fair and impartial is something that I don't think is a problem for me" despite the difficulty of her previous experience as a juror in a child sexual abuse trial), 99-102 (Juror Monroe stating she "wouldn't be biased" and would be "as fair as they come" despite having been the victim of sexual abuse).

9

In cases where potential jurors have disclosed grounds for possible bias but have stated that they could be fair, the Fifth Circuit has held that the defendant was not denied an impartial jury. *See Buckner*, 945 F.3d at 911 ("Texas courts have found that a juror who was a victim of a similar crime but who credibly states he will not be affected by that fact is not biased."); *Green v. Quarterman*, 213 F. App'x 279, 281 (5th Cir. 2007) (unpublished) (finding counsel was not ineffective for failing to challenge jurors who had stated that they or their family members had been victims of similar offenses, given their assurance that they could be fair). Other than pure speculation, Petitioner offered no argument or evidence suggesting that the jurors could not set aside their personal experiences and render a verdict solely on the evidence presented at trial.[1] *See Patton v. Yount*, 467 U.S. 1025, 1035 (1984) (determining bias centers on a juror's own indication that he has such fixed opinions that he could not be impartial). Thus, Petitioner has not provided this Court with a factual basis to conclude that any of the three jurors had a disqualifying bias.

In sum, Petitioner fails to demonstrate that jurors Menchaca, Monroe, or Chang "had such fixed opinions that they could not judge impartially the guilt of the defendant." *Chavez*, 310 F.3d at 811. The testimony of all three of the prospective jurors generally indicated an ability to consider the evidence and follow the law when determining Petitioner's guilt and potential punishment, and none of the three displayed a bias that would "prevent or substantially impair" their performance as jurors, if chosen. *Witt*, 469 U.S. at 424. Accordingly, the state court's denial of relief was not clearly contrary to, or an unreasonable application of, clearly established federal law.

---

[1]     In fact, the record contradicts Petitioner on several occasions, including his argument that juror Chang had a record of felony convictions. See ECF No. 27-18 at 84-85.

**C.**   **Trial Counsel** (Claims 4-9)

Petitioner next raises several claims alleging that he was denied the right to effective assistance by his trial counsel, Anton Hajek.[2]   Each of these allegations was raised during petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals.   As discussed below, Petitioner fails to demonstrate the state court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.   The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.   466 U.S. at 687-88, 690.   According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."   *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.   *Strickland,* 466 U.S. at 687-89.   Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).   To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[2]   Specifically, Petitioner contends that counsel: (1) rendered ineffective assistance due to physical and mental infirmities, (2) failed to quash the indictment, (3) failed to remove biased jurors, (4) failed to conduct an independent pretrial investigation, (5) failed to object to improper jury instructions or the improperly-amended indictment, and (6) inadequately cross-examined certain key witnesses.

proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

## 2. Counsel's Health (Claim 4)

Petitioner's first IATC claim alleges that his trial attorney, Hajek, was ineffective due to physical and mental infirmities that occurred as a result of a stroke. According to Petitioner, Hayek's stroke caused diminished capacity and cognitive decline that resulted in his committing the errors discussed in his remaining allegations.[3] Other than the other IATC claims, however, Petitioner provides no evidence that Hayek suffered from a stroke, much less that it resulted in the severe cognitive decline now alleged.

---

[3]     These allegations will be discussed individually in the following sections.

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. Conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same).

Here, Petitioner's allegation is conclusory, speculative, and unsupported by any evidence or facts. But "absent evidence in the record," this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011). Thus, Petitioner's claim is denied. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

3.      The Indictment (Claim 5)

Petitioner next contends trial counsel was ineffective for failing to urge or join Petitioner's motion to quash the indictment. Specifically, Petitioner argues that counsel should have been aware that both the original indictment and the amended indictment were defective with regard to counts II through V and joined in his objection. But as the record in this case indicates, the trial court addressed the merits of Petitioner's motion even though counsel did not file the motion himself:

> THE COURT: I'll tell you what, after hearing those allegations in the indictment, I think they have put everything in there. It's obvious—I don't think there is any omissions as far as the charging document that I can see. I have no idea what the evidence might show, but it seems like they've charged them with everything they could. So I'm going to deny that at this time. Obviously, he will have an

13

opportunity to ask for a directed verdict at the appropriate time or something to mandate[.]

(ECF No. 27-19 at 8-9).

There is no indication that the trial court would have granted a motion to quash the amended indictment had it been filed by counsel instead of Petitioner.  Nor is there any indication that the trial court would have abused its discretion in denying the motion had it been filed by counsel.  Quite the opposite, the trial court found during Petitioner's state habeas proceedings that the amended indictment conferred jurisdiction to the trial court because it provided fair notice of the specific offenses for which Petitioner was charged.  (ECF No. 28-9 at 99-100).  The court concluded that there was "no evidence . . . that the amendments [to the indictment] were improper."  *Id*. at 99.[4]  Because the indictment met the jurisdictional requirements under state law, the trial court would not have erred in denying a motion to quash no matter who filed it.  Thus, Petitioner was not prejudiced by counsel's failure to attempt to quash the indictment.

Finally, Petitioner argues that counsel's failure to quash the indictment resulted in a double jeopardy violation because counts II through V were predicate offenses for the continuous sexual abuse of a child charge contained in count I.  But as discussed previously, Petitioner was acquitted of count III, and the state appellate court reversed his convictions for counts II, IV and V on direct appeal based on double jeopardy.  (ECF No. 27-5).  Thus, Petitioner's double-jeopardy allegation is moot because he already received relief on that claim on direct appeal.  Relief is therefore denied.

---

[4]    These findings and conclusions were ultimately adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. (ECF No. 28-3).

4.      Biased Jurors (Claim 6)

In Claim 6, Petitioner argues that counsel was ineffective for failing to prevent certain biased jurors from being empaneled on the jury.   Specifically, Petitioner contends: (1) juror Kelley Monroe was biased because she is a sexual abuse survivor who stated she could not be fair, (2) juror Laura Menchaca was biased because she had developed PTSD from serving as a juror in a previous child sexual abuse case, and (3) juror Michelle Chang was biased because she also is a survivor of sexual abuse.   Petitioner fails to demonstrate that the state court's rejection of this claim during Petitioner's state habeas proceeding was unreasonable.

As discussed previously, jurors Monroe, Menchaca, or Chang did not have "such fixed opinions that they could not judge impartially the guilt of the defendant."  *See* Section IV (B), *supra* (citing *Chavez*, 310 F.3d at 811).   Their voir dire testimony generally indicated an ability to consider the evidence and follow the law when determining Petitioner's guilt and potential punishment, and none of the three displayed a bias that would "prevent or substantially impair" their performance as jurors, if chosen.  *Witt*, 469 U.S. at 424.   As a result, counsel cannot be deficient for failing to challenge each of these three jurors.  *Koch*, 907 F.2d at 527 (finding "counsel is not required to make futile motions or objections."); *see also Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel cannot be deficient for failing to press a frivolous point).   Federal habeas relief is therefore unwarranted.

5.      Investigation (Claim 7)

In Claim 7, Petitioner asserts counsel was ineffective for failing to undertake even a rudimentary investigation, prepare for trial, or develop a defensive strategy on his behalf. Among other things, Petitioner believes counsel was unacquainted with the Texas Penal Code and should have interviewed the complainants prior to trial.   Petitioner raised these allegations

during his state habeas proceedings. As discussed below, Petitioner fails to show that the state court's rejection of this allegation was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.

Trial counsel generally have broad discretion when it comes to deciding how best to proceed strategically. *Strickland*, 466 U.S. at 673; *Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (noting the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client."). This wide latitude given to trial counsel includes the discretion to determine how best to utilize limited investigative resources available. *Richter*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."). While counsel is required to undertake a reasonable investigation, counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable." *Strickland*, 466 U.S. at 690; *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2011) (holding the failure to present a particular line of argument is presumed to be the result of strategic choice).

Here, Petitioner has not pointed to any evidence establishing that counsel was unfamiliar with the penal code or failed to conduct an adequate pretrial investigation. Indeed, the record refutes Petitioner's assertions that counsel lacked a strategy and was unfamiliar with the facts of the case. Based on his knowledge of the case and the requirements for a conviction under the penal code, counsel was able to thoroughly cross-examine the State's witnesses, question their credibility, and argue that the State had not established guilt beyond a reasonable doubt. Thus, Petitioner fails to demonstrate that state court's ruling on trial counsel's investigation and strategy "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Moreover, Petitioner has not alleged with any specificity what further investigation would have revealed or how it would have altered the outcome of the trial. *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011). Petitioner also has not pointed to exculpatory evidence that trial counsel could have uncovered with additional investigation or proven that an undiscovered witness would have testified in his favor. *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010); *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). As a result, Petitioner has not shown counsel's performance was deficient or that the state court's denial of this claim was an unreasonable application of *Strickland*.

      6.    Jury Instructions (Claim 8)

Petitioner next contends that trial counsel provided ineffective assistance by failing to object to an improper jury instruction. According to Petitioner, the jury instructions allowed the jury to convict if the alleged victim was seventeen years of age or younger despite the fact that, to be convicted of continuous sexual abuse of a child under Texas Penal Code § 21.02, the victim must be a child under the age of fourteen. This allegation was rejected on direct appeal and again by the Texas Court of Criminal Appeals during Petitioner's state habeas proceedings. Petitioner fails to demonstrate the state court's rejection of the claim was either contrary to, or an unreasonable application of, Supreme Court precedent.

Claims of improper jury instruction or rejection of a requested jury instruction in state criminal trials do not generally form the basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002); (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was

erroneous)).   Rather, such claims only support a claim for habeas relief if the erroneous instruction by itself rendered the trial fundamentally unfair. *Henderson v. Kibbe*, 431 U.S. 145, 154-55 (1977); *Galvan*, 293 F.3d at 764 (relevant inquiry on claims of improper or rejected jury instructions is whether there was prejudice of constitutional magnitude).   The relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Galvan*, 293 F.3d at 764-65 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Petitioner fails to make this showing.   While the jury instruction did indicate that a "child" is defined as a person younger than seventeen years of age, it also correctly stated the law concerning continuous sexual abuse of a child:

> Our law provides that a person commits the offense of continuous sexual abuse of a child if during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older *and the victim is a child younger than 14 years of age*.

(ECF No. 27-15 at 135) (emphasis added). In addition, the first paragraph of the application portion of the charge correctly recites as follows:

> Now, if you find from the evidence beyond a reasonable doubt that Benjamin Escobedo did, during a period that was thirty (30) or more days in duration, to-wit: from on or about the 4th [d]ay of January, 2013, through the 19th day of February, 2015, when Benjamin Escobedo was seventeen (17) years of age or older, commit two or more acts of sexual abuse *against a child younger than fourteen (14) years of age*, namely: . . . .

*Id.* at 139 (emphasis added).

Contrary to Petitioner's assertion, the jury instruction correctly stated the law concerning continuous sexual abuse of a child.   Furthermore, the State clarified during closing argument that the jury could only convict Petitioner of the continuous offense if they found that both victims were under the age of fourteen when the abuse took place.   (ECF No. 27-21 at 10-11).   And

18

indeed, the jury heard evidence that one victim was sexually abused by Petitioner on more than one occasion prior to her fourteenth birthday while another victim was younger than fourteen throughout the period of continuous sexual abuse. *See* Tex. Penal Code § 21.02(b) (providing that a person may commit the offense of continuous sexual abuse against "one or more victims").

Because the jury was properly instructed on the law regarding the charge of continuous sexual abuse of a child, Petitioner fails to demonstrate that the trial court's instructions were erroneous, much less show that instructions so "infected" the entire trial as to result in a denial of due process. For this reason, he cannot show that counsel was deficient for not objecting to the instructions or that he was prejudiced as a result. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections). Consequently, viewing the allegation under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim must fail. *See Richter*, 562 U.S at 105.

   7.    Cross-Examination (Claim 9)

In his final IATC claim, Petitioner faults counsel for failing to adequately cross-examine the complainants in this case. Petitioner believes counsel should have scrutinized their testimonies by asking a series of questions designed to expose the complainants' bias, prejudice, and motives to allege abuse. Petitioner unsuccessfully raised this allegation during his state habeas proceedings. As discussed below, he fails to demonstrate the state court's rejection of the claim was either contrary to, or an unreasonable application of, *Strickland*.

To start, Petitioner chastises counsel's performance during cross-examination but fails to provide any specific argument or line of questioning that counsel should have undertaken. For this reason alone, Petitioner's conclusory and speculative allegation is unworthy of federal

habeas relief. *See Demik*, 489 F.3d at 646 ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller*, 200 F.3d at 282).

Nevertheless, a thorough review of the trial transcript indicates that counsel effectively cross-examined the first complainant on several issues, including the complainant's credibility, the details of her story, and why she didn't report the alleged incidents sooner. (ECF No. 27-19 at 59-69). Counsel's cross-examination was reasonable and "[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *See Castillo v. Stephens*, 640 Fed. App'x 283, 292 (5th Cir. 2016) (unpublished) (citing *Strickland*, 466 U.S. at 689).

Further, Petitioner has not shown that counsel's strategic decision not to cross-examine the second complainant was unreasonable. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Because counsel's decisions regarding cross-examination are strategic, they "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). As such, Petitioner has not shown counsel's performance was deficient or that the state court's denial of this claim was unreasonable.

**D.** **Appellate Counsel (Claims 11-13)**

In his final three allegations, Petitioner contends that his appellate counsel, Michael Robbins, rendered ineffective assistance during Petitioner's direct appeal proceedings. Specifically, Petitioner faults counsel for not raising claims concerning: (1) trial counsel's failure to object to the amended indictment, (2) trial counsel's failure to object to biased jurors, and (3) trial counsel's inadequate cross-examination of witnesses. In response, Respondent contends

that these allegations are subject to denial by this Court as procedurally defaulted because the state court dismissed the claims as an abuse of the writ.  Respondent is correct.

Procedural default occurs where a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that state procedural rule provides an independent and adequate ground for the dismissal.  *Davila*, 582 U.S. at 527; *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014) (citing *Maples v. Thomas*, 565 U.S. 266, 280 (2012)).  The "independent" and "adequate" requirements are satisfied where the state court clearly indicates that its dismissal of a particular claim rests upon a state ground that bars relief, and that bar is strictly and regularly followed by the state courts.  *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012) (citing *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001)).  This doctrine ensures that federal courts give proper respect to state procedural rules.  *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).

In this case, the Texas Court of Criminal Appeals refused to consider Petitioner's claims regarding appellate counsel when he raised them for the first time in his third state habeas application, dismissing the application as subsequent under Texas Code of Criminal Procedure Article 11.07 § 4(a)-(c).  (ECF Nos. 28-10, 28-11 at 4-21).  That statute, codifying the Texas "abuse of the writ" doctrine, has repeatedly been held by the Fifth Circuit to constitute an "adequate and independent" state procedural ground that bars federal habeas review.  *Ford v. Davis*, 910 F.3d 232, 237 (5th Cir. 2018) (citation omitted); *Canales*, 765 F.3d at 566; *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

Consequently, Petitioner is precluded from federal habeas review unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider his claim will result in a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750-51;

*Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004).  Petitioner did not attempt to demonstrate cause and prejudice to excuse the default in either amended petition or reply.  (ECF Nos. 21, 30).  Nor has he made any attempt to demonstrate that the Court's denial of the claim will result in a "fundamental miscarriage of justice."  Thus, circuit precedent compels the denial of Petitioner's claims regarding his direct appeal counsel as procedurally defaulted.

## E.    Actual Innocence (Claim 10)

Finally, Petitioner contends that he is actually innocent under the standard set forth in *Schlup v. Delo,* 513 U.S. 298, 329 (1995).  Petitioner does not allege a "freestanding" claim of actual innocence—rather, he argues that he is "procedurally innocent" of the charged offense due to the various constitutional violations he has alleged throughout his petition.  (ECF No. 30 at 24).  According to Petitioner, this claim is offered only as a gateway to obtain federal review of otherwise procedurally-barred allegations.  *Id.*

Petitioner is correct that a convincing showing of actual innocence under *Schlup* may enable a habeas petitioner to overcome a procedural bar to consideration of the merits of a constitutional claim.  *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013).  But "tenable actual-innocence gateway pleas are rare," and, under *Schlup*'s demanding standard, the gateway should open only when a petitioner presents new "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *McQuiggin,* 569 U.S. at 386, 401 (*quoting Schlup,* 513 U.S. at 316).  In other words, Petitioner is required to produce "*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Schlup,* 513 U.S. at 324.

Petitioner does not meet this demanding standard.  Indeed, as the state habeas trial court noted, Petitioner "has not brought forth any new evidence" establishing his innocence.  (ECF No. 28-9 at 101).  Instead, Petitioner seems to argue that he likely would not have been convicted had the various constitutional violations raised in his petition not occurred.  But such conclusory assertions do not constitute "*new* reliable evidence" establishing his innocence.  *See Ford*, 910 F.3d at 235 ("[A]bsent evidence in the record," a court cannot "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . ., unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.") (citation omitted); *Koch*, 907 F.2d at 530 (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").  Petitioner's barebones allegation of "innocence," unsupported by any argument or "newly-discovered evidence" that might call the jury's decision into question, is insufficient.

In addition to being conclusory and failing to establish his innocence, Petitioner's arguments were already rejected by the state court during Petitioner's state habeas proceedings and do not undermine confidence in the outcome of his trial.  Consequently, the procedural default of any claims raised in Petitioner's federal habeas petition will be not excused under the actual-innocence exception established in *Schlup*.[5]

### V. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322,

---

[5] Even if Petitioner characterized this allegation as a "freestanding" claim of actual innocence under *Herrera v. Collins*, 506 U.S. 390, 417 (1993), the claim still would not provide a cognizable basis for federal habeas relief. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (citing *Herrera*, 506 U.S. at 400). The Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review. *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *see also Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases).

335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward when a district court has rejected a petitioner's constitutional claims on the merits:  The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El,* 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds. *Id.* In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (citing *Slack*, 529 U.S. at 484).  In other words, a COA should issue if the petitioner *not only* shows that the lower court's procedural ruling is debatable among jurists of reason, but also makes a substantial showing of the denial of a constitutional right.

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

24

## VI.  Conclusion and Order

After careful consideration, the Court concludes that Petitioner's Claims 1, 2, 11, 12, and 13 are procedurally barred from federal habeas review.  Concerning the remainder of Petitioner's allegations, Petitioner has failed to establish that the state court's rejection of the allegations on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings.  As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Benjamin Escobedo's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 21) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED** this the _____ day of November, 2023.


_____
**ORLANDO L. GARCIA**
**United States District Judge**